UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Plaintiff |
| v. | Criminal Action No. 3:18-cr-00197-RGJ |
| KENNETH G. SIMPSON | Defendant |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Kenneth Simpson's Motion to Suppress Auto Stop and Search of Vehicle ("Motion to Suppress"). [DE 15]. The Court held a suppression hearing on February 19, 2019. [DE 26]. Briefing is complete, and the Motion is ripe. [*See* DE 18; DE 31; DE 34]. For the reasons below, the Court **DENIES** Simpson's Motion.

## BACKGROUND

Louisville Metro Police officers Stafford, Seng, and Weber, driving separately, were dispatched to Elliott Avenue in Louisville, Kentucky in response to a 911 report of a man wearing a red hat, white t-shirt, and standing outside a white vehicle armed with a gun. [DE 26, Tr. of Supp. Hearing at 77:2–7]. The report did not suggest that the man was pointing the gun at anyone or otherwise committing a crime. [*Id.* at 134:9–24].

On Elliott Avenue, the officers saw a man matching the report's description enter a white vehicle and travel west on Elliott Street to 26th street, where the vehicle turned left and made an immediate right on Broadway. [DE 18 at 39]. Officer Stafford drove east on Elliott and south on 24th street before turning right on Broadway to follow the white car, now driving west on Broadway about twenty-five miles above the speed limit. [DE 26, Tr. of Supp. Hearing at 82:21–25; 83:1–3]. The car crossed over the line dividing the left and right westbound lanes of Broadway

1

without signaling, so Officer Stafford turned on his emergency lights to signal for the vehicle to pull over. The car slowed but traveled between one and one-half to two blocks before coming to a complete stop. [*Id.* at 84:3–11].

Officer Stafford drew his service weapon and held it by his side as he approached the driver's side of the vehicle. [*Id.* at 103:2–4]. Officer Stafford tried to open the driver's side door. [*Id.* at 103:2–5]. Officer Stafford then ordered the driver, Simpson, to place his hands on the steering wheel and step out of the vehicle. After Simpson exited the vehicle, Officer Stafford conducted a frisk of Simpson's clothing and told Simpson to stand at the rear of the vehicle. [*Id.* at 84:23–25; 85:1–25; 86:1–2]. Officer Stafford asked Simpson if there were weapons in the car, and Simpson replied that there were not. The officers did not see a weapon or ammunition in plain view. [*Id.* at 108:1–11].

Officers Stafford and Seng then searched the car's passenger compartment, and Officer Seng later discovered a loaded gun under the front passenger seat within reach of the driver. [*Id.* at 86:12–20; 131:9–13; 133:6–7].[1] Officer Stafford asked Simpson if he was a convicted felon, and Simpson replied that he was. Officer Stafford placed Simpson in handcuffs and advised him of his *Miranda* rights. [*Id.* at 86:22–25; 87:1–3]. Officer Stafford asked Simpson for his personal information, and Simpson responded that his identification card was in his pocket. [DE 31 at 162–63]. Because Simpson was handcuffed, Officer Stafford searched Simpson's pants pocket for the identification card. Officer Stafford found another round of pistol ammunition in Simpson's pocket. [DE 26, Tr. of Supp. Hearing at 88:2–9].

---

[1] The parties disagree about whether Simpson consented to the search. In the citation from Simpson's arrest, Officer Stafford stated that Simpson consented. [Def. Ex. 1–2]. Officer Stafford told Simpson that he was going to search the car, and Simpson did not respond. [DE 26, Tr. of Supp. Hearing at 86:3–9]. In any case, the United States has said that it is not relying on a "theory that Mr. Simpson consented to a search of the vehicle." [DE 31 at 167]. Indeed, the United States has conceded that it does not believe the record is sufficient to establish that Simpson consented to the search. [*Id.* at 168].

The United States indicted Simpson for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [DE 1; DE 20]. Simpson argues that the stop and search of his vehicle were improper because the police did not have probable cause or reasonable suspicion. [DE 15 at 30–31]. Simpson seeks to suppress the evidence found in the vehicle as fruits of the poisonous tree. [*Id.* at 32]. The Court held a suppression hearing and briefing is complete. [*See* DE 18; DE 31; DE 34].

## DISCUSSION

**A.     The Officers Had Probable Cause to Stop Simpson's Vehicle.**

First, Simpson asserts that his vehicle was stopped without probable cause or reasonable suspicion. [DE 15 at 30]. In his post-hearing brief, Simpson further alleges that the 911 call, Officer Stafford's belief that a firearm was in the vehicle, Simpson's alleged speeding, Simpson's improper lane change and failure to signal, and the fact that Simpson was driving on a suspended or revoked license cannot support the probable cause or reasonable suspicion necessary to justify the traffic stop. [DE 34 at 179–83]. As to the improper lane change and failure to signal, Simpson notes that he was never charged with these violations. [*Id.* at 180].

Law enforcement can lawfully stop any vehicle when it has probable cause that a traffic violation has occurred. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). And a traffic stop is justified even if the traffic violation is pretext for further investigation by law enforcement. *Id.*; *see also Whren v. United States*, 517 U.S. 806, 813 (1996). An officer's actual motivation for making the stop is irrelevant to the constitutionality of the stop when there is probable cause to make the stop. *See United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002). Thus, if a traffic stop is properly supported by probable cause, "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Ferguson*, 8 F.3d at 391.

Improperly changing lanes, failing to signal, and speeding each violate Kentucky law. *See* Ky. Rev. Stat. § 189.380 (improperly changing lanes and failing to signal); Ky. Rev. Stat. § 189.390(2) (speeding). Officer Stafford observed Simpson driving over the speed limit, improperly change lanes, and failing to use his turn signal. [DE 26, Tr. of Supp. Hearing at 82:21–25; 83:1–3]. It is irrelevant that Officers Stafford and Seng also suspected that Simpson was the individual described in the 911 report. Thus, the officers had probable cause to stop the vehicle.

**B.    The Officers Had Reasonable Suspicion to Search Simpson's Vehicle.**

Next, Simpson asserts that the officers' search of the vehicle was not supported by reasonable suspicion. [DE 15 at 31]. Simpson notes that the officers did not attempt to write him a traffic ticket and instead conducted a warrantless search of his vehicle. *Id.* Simpson also argues that he did not consent to a search of the vehicle and that, even if he did consent, the officers had already begun the search and had coerced his alleged consent.[2] [DE 34 at 185–89]. Finally, Simpson argues that there were no exigent circumstances justifying a warrantless search of the vehicle.[3] *Id.*

An Officer may perform a warrantless investigative stop of a vehicle when the officer has a reasonable and articulable suspicion that the person in the vehicle has been, is, or is about to be engaged in criminal activity. *United States v. Place*, 462 U.S. 696, 702 (1983) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The validity of a *Terry* stop is assessed based on the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8 (1989). Officers are permitted to draw

---

[2] The United States has since acknowledged that it does not believe the record establishes that Simpson consented to a search of the vehicle. [DE 31 at 168]. Accordingly, the Court need not address consent at this time.

[3] The United States does not argue that exigent circumstances justified the warrantless search of Simpson's car. Rather, the government only argues that the warrantless search of the car was justified under *Terry v. Ohio*. [DE 31 at 163–67]. Accordingly, the Court need not address exigent circumstances at this time.

upon their own experiences and training to make inferences about the information available to them. *U.S. v. Shank*, 543 F.3d 309, 315 (6th Cir. 2008). And when conducting a *Terry* stop, the officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (citing *Terry*, 392 U.S. at 27).

In *Michigan v. Long*, the Supreme Court held that *Terry* applies to the passenger compartment of a vehicle when there is "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. 1032, 1049 (1983) (internal quotation marks and citations omitted).[4] This is because "roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding the suspect." *Id.* Officers may instruct occupants of the car to exit during the traffic stop if there is a concern about officer safety. *See Mimms*, 434 U.S. at 110.

Here, the officers responded to a 911 report of an individual with a gun in a high-crime area. [DE 26, Tr. of Supp. Hearing at 75:4–24]. After identifying an individual, Simpson, that fit the description from the call, officers observed Simpson drive off at a high rate of speed. [*Id.* at 128:18–22]. Even after the officers pursued Simpson with emergency lights on, Simpson did not

---

[4] *Michigan v. Long* stemmed from a line of cases that expanded *Terry* to include searches of vehicles because of the danger presented to officers in a traffic stop situation and the need for more safeguards to ensure that officers remained safe when they performed them. In *Chimel v. California*, the Court held that when an officer makes an arrest, it is reasonable to search not only the arrestee's person but also the area within their immediate control, which may include a vehicle. 395 U.S. 752, 763 (1969). In *Adams v. Williams*, the Court upheld a search that included reaching into the passenger compartment of a vehicle and removing a gun from a suspect's waistband only after learning of the weapon from an informant. 407 U.S. 143, 147–48 (1972). Finally, in *Pennsylvania v. Mimms*, the Court held that officers may remove an individual from his or her car during a stop for a traffic violation. 434 U.S. 106, 110 (1977).

stop for several blocks. [*Id.* at 84:7–8]. Given these facts, the officers had an articulable and reasonable belief that Simpson was armed and potentially dangerous. Thus, under the totality of the circumstances, the police had a reasonable and articulable suspicion that Simpson had been or was about to engage in criminal activity, which justified the warrantless search of the vehicle.

The warrantless search was also justified by the officers' belief that the suspect was dangerous and may have gained immediate control of the weapon. Here, based on Simpson's similarities to the individual described in the 911 report, officers already had a reasonable and articulable suspicion that Simpson had a weapon located within the car. That suspicion was enhanced when Simpson delayed pulling over for several blocks. Based on this belief, the officers were justified in instructing Simpson to exit the vehicle. The search of the vehicle for weapons was also proper because the officers had a reasonable belief that Simpson might pose a danger to them. Thus, the police were justified in performing a warrantless search of Simpson's vehicle.

## CONCLUSION

Accordingly, for the stated reasons, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Simpson's Motion to Suppress, [DE 15], is **DENIED;** and

(2) This matter is set for an in-person status conference on **April 17, 2019 at 11:00 a.m.** at the Gene Snyder United States Courthouse before the Honorable Rebecca Grady Jennings, United States District Judge.

Cc: Counsel of record